IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:15CV195 |
| | ) | |
| V. | ) | |
| | ) | |
| $35,140.00 IN UNITED STATES CURRENCY, | ) ) | FINDINGS AND RECOMMENDATION |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court on Claimant Jonathan Shulkin's ("Claimant") motion for the return of the defendant currency and for suppression of that currency as evidence in this forfeiture action. ([Filing 10](#).) A hearing on this matter was held before the undersigned on July 21, 2015. Having heard and studied the evidence on this matter, and for the reasons explained below, the undersigned will recommend to Chief United States District Court Judge Laurie Smith Camp that Claimant's motion be denied.

### FACTS

On January 7, 2015, Richard Lutter ("Lutter"), an investigator with the Nebraska State Patrol, and other law enforcement officers were at the Omaha railroad station checking the railroad passenger manifest. The officers' review of the manifest led to concerns about a ticket purchased with cash by Claimant. The ticket was purchased less than 48 hours prior to Claimant's planned departure from Iowa to Sacramento, California. At the hearing on this matter, Lutter testified that given experience as an interdiction officer, he was concerned about tickets purchased for cash near the departure time to places like Sacramento, California because, based on his experience, many such people were couriers bringing cash to the west coast. Lutter had no further information on Claimant and did not run a records check.

On account of Lutter's concerns regarding Claimant's ticket purchase, Lutter boarded the train and knocked on Claimant's compartment door. He asked Claimant, "may I speak

with you?" Claimant responded, "okay." Lutter then engaged Claimant in conversation about his travel plans and later asked him whether he had any drugs or large amounts of money, to which Claimant responded, "no." Lutter then asked for permission to search. Lutter testified at the hearing that while Claimant gave no verbal response to his question, Claimant offered the bag to Lutter and did not object to the search.

At the time of his contact with Claimant, Lutter was dressed in plain clothes and while he was armed, his weapon was not exposed. He showed Claimant his Nebraska State Patrol credentials on initial contact and Lutter was wearing a body camera on his hat.

The search was over with Lutter finding three bundles in Claimant's backpack which, Lutter testified that based upon his experience and training, were consistent with bundles of currency. Lutter further noted that in his experience, he had never seen anything but money packaged in that manner. Lutter then arrested Claimant, but did not inform Claimant at that time of the reason for the arrest.

On cross-examination, Lutter testified that while the State Patrol has consent-to-search forms, he did not use one on this occasion and that he found that use of such forms was less conducive to individuals giving consent to search. Lutter testified that he received no verbal consent to search from Claimant, but that he believed that consent was given or implied by Claimant's actions.

Claimant testified that he told Lutter early on in the contact that he preferred not to be searched. Claimant further testified that he believed he had no choice but to submit to Lutter's request and that he submitted out of fear based, in part, upon the fact that he is Jewish and that his father had told him stories about Jews being taken off trains in earlier times. Claimant also testified that he did not believe he lied or mis-answered the early question by Lutter as to whether he had any large sums of money because Lutter's question was limited to large sums of money involved with illegal activities.

The money was seized because law enforcement believed Claimant possessed the currency due to the sale of a controlled substance.

**DISCUSSION**

In support of his motion for the return of the defendant currency, Claimant first argues that this Court lacks jurisdiction to enforce forfeiture because the forfeiture proceedings were commenced subsequent to the United States Department of Justice's adoption of a policy which provides that the Department of Justice would no longer file forfeiture actions on cash seized as the result of local law enforcement actions. (Filing 10-1.) Simply put, Claimant asserts that forfeiture is prohibited because it violates the Department of Justice's new policy regarding forfeiture proceedings. This argument is unpersuasive.

It is true that the Department adopted a policy which sets forth the Department's present course of action as it relates to seized cash. However, Claimant has offered no authority involving forfeiture proceedings to support the position that this new policy makes forfeiture proceedings in the circumstances here unconstitutional or otherwise unlawful. In fact, case law supports the opposite conclusion. In *United States v. Gruttadauria*, 439 F. Supp.2d 240 (E.D.N.Y. 2006), in discussing the Department of Justice's "Petite Policy," the United States District Court stated:

> The Petite policy is an internal statement by the United States Attorney General setting forth guidelines for federal prosecutors regarding dual and successive federal prosecutions . . . It is well-settled that the *Petite policy* affords defendants no substantive rights. It is merely an internal guideline for exercise of prosecutorial discretion, not subject to judicial review.

*Id*. at 247 (internal quotations and citations omitted). Like the *Petite Policy*, the Department of Justice's new policy regarding forfeiture proceedings does not vest Claimant with any enforceable rights. Moreover, it should be noted that the policy in question here, which was adopted on January 16, 2015, was not in place at the time the currency was actually seized from Claimant. (Filing 10-1.)

Claimant next argues that the currency was seized "illegally by a Nebraska State Patrol Investigator acting without a warrant, consent, probable cause, exigent circumstances, or any other legal justification to support the warrantless seizure." (Filing 10 at CM/ECF p. 2). Claimant maintains that Lutter entered the train compartment without his consent and

then searched Claimant's bag, where the money was found, without his consent. According to Claimant, at the time of its seizure, Lutter had no reasonable basis to believe that the money had been acquired in anything other than a legal manner. The government contends, however, that Lutter's contact with Claimant was a consensual encounter. The government maintains that Claimant allowed Lutter to enter the train compartment and impliedly gave Lutter consent to search his bag.

Following the hearing on this matter, the undersigned carefully reviewed, in its entirety, a video and audio recording of the encounter between Lutter and Claimant. The undersigned finds that the video (Exhibit 2) is the best evidence of the events which occurred in this case. The recording, which was captured with Lutter's body camera, revealed the following:[1]

1. Claimant opened the door to the train compartment and spoke to Lutter about his travel plans. (2:18.)

2. Lutter reached into the train compartment to retrieve a water lid or water bottle that had fallen on the floor. (Contrary to Claimant's position at the hearing, this is the only time prior to consent being obtained that Lutter reached into or entered the compartment.) (3:00.)

3. Lutter asked Claimant if he was traveling with any large sums of money *connected* with criminal activity. Claimant denied the presence of any such money. (4:52.)

4. Lutter also asked Claimant if he possessed any large sums of U.S. Currency– $10,000 or more. Claimant denied the presence of any such money. (Notably, on this occasion, Lutter's question did not tie the large sums of currency with criminal activity, as he did during the previous exchange. This contradicts Claimant's testimony as to why he denied having currency.) (6:30.)

---

[1] The time in which each event took place during the running of the video is noted by minute and second at the end of each numbered paragraph.

5. Lutter asked Claimant if he could conduct a quick search of the room and bag. In response, Claimant asked, "Search?" "Bag?" Claimant then began opening certain sections of his bag and began going through them. (6:46.)

6. Lutter asked Claimant if it would be alright if Lutter conducted the search of the bag, assuring Claimant that he would not lose any of his things. Claimant responded, "I guess so if you have to, yeah sure." (7:05.) Lutter then began searching the bag. (7:10.)

7. Lutter told Claimant to stand up and Claimant was removed from the train compartment based upon Lutter's discovery of the three bundles located in the two zipper bags which Lutter believed to be consistent with currency bundles. (7:40.)

8. From the time of the initial encounter between Claimant and Lutter and the time Claimant gave Lutter consent to search the bag, no more than eight minutes elapsed.

Having heard the testimony and reviewed the evidence, the Court finds that the initial encounter between Claimant and Lutter began with a legitimate law enforcement tactic– a "knock and talk." Although this tactic can become illegal if police assert their authority, refuse to leave or otherwise make individuals feel like the cannot refuse to open their door, no such evidence is presented here. *See United States v. Spotted Elk*, 548 F.3d 641, 655 (8th Cir. 2008). At the time of his contact with Claimant, Lutter was dressed in plain clothes and his weapon was not exposed. Based upon the review of the video, it is apparent that there was no show of authority that would make Claimant feel as if he could not terminate the encounter. Claimant testified that he believed he had no choice but to submit to Lutter's request and that he submitted out of fear based, in part, upon the fact that he is Jewish. However, Claimant's testimony is less than credible and self-serving. There were several instances in which Claimant's hearing testimony conflicted with what was captured on the video. For instance, Claimant asserted that he told Lutter that he preferred not to be searched, yet this statement is not revealed in the recording. In short, there is no evidence that Claimant was afraid, under any pressure or otherwise in distress prior to Lutter's search.

The Court further concludes that Claimant did, in fact, give Lutter verbal consent to search the bag. Claimant's consent is captured on the recording provided to the Court. Additionally, even in the absence of verbal consent, it is clear from Claimant's behavior in voluntarily opening the bag and showing Lutter a portion of its contents that he consented to the search. Lutter did testify at the hearing that he did not obtain verbal consent to search. While Lutter's testimony is contradicted by the recording, the undersigned finds that Lutter is nonetheless credible. Claimant's verbal consent was difficult to hear on the audio recording and it is quite possible that Lutter did not hear Claimant or simply does not remember obtaining verbal consent. In any event, the recording shows Claimant voluntarily opening his bag and going through its contents which supports Lutter's testimony that he believed consent was given or implied by Claimant's actions.

Although not directly raised in his motion, Claimant apparently maintains that Lutter did not know that the bundles were contraband because Lutter did not open the bundles until they arrived at the police station. However, Lutter testified that based upon his experience and training, the bundles were consistent with bundles of currency, and noted that in his experience, he had never seen anything but money packaged in that manner. Additionally, as revealed in the video, Claimant denied having *any* large amounts of currency with him, including currency *not* connected to illegal activity.

Accordingly,

**IT IS HEREBY RECOMMENDED** to Chief United States District Court Judge Laurie Smith Camp that Claimant's motion (filing 10) be denied in its entirety.

The parties may file an objection to the undersigned's Findings and Recommendation within fourteen (14) days of the filing of the un-redacted transcript from the hearing on this matter. Failure to timely object may constitute a waiver of any objection.

**DATED July 24, 2015.**

                                           **BY THE COURT:**

                                           **S/ F.A. Gossett**
                                           **United States Magistrate Judge**