# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:15CV195 |
| vs. | |
| $35,140.00 IN UNITED STATES CURRENCY, | MEMORANDUM AND ORDER |
| Defendant. | |

This matter is before the Court on the Findings and Recommendation (Filing No. 28), issued by Magistrate Judge F.A. Gossett recommending that the Motion to Compel (Filing No. 10) filed by the Claimant, Jonathan A. Shulkin ("Claimant"), be denied. Claimant filed an Objection to the Findings and Recommendation (Filing No. 29) as allowed by 28 U.S.C. § 636(b)(1)(C). The Government did not respond to the Defendant's Objection. For the reasons set forth below, the Findings and Recommendation will be adopted, and the Motion to Compel will be denied.

## BACKGROUND

Claimant does not object to the Magistrate Judge's factual findings and they are adopted in their entirety. The following facts are provided and summarized by way of background. On January 7, 2015, Richard Lutter ("Lutter"), an investigator with the Nebraska State Patrol, together with other law enforcement officers conducted a review of the passenger manifest of a passenger train at the Omaha Amtrak railroad station. Based upon their review, officers had concerns about the Claimant because his ticket from Iowa to Sacramento, California, was purchased less than 48 hours prior to departure.

Lutter boarded the train and knocked on Claimant's sleeper cabin door and asked Claimant if he could speak with him. Lutter then engaged Claimant in conversation about his travel plans and asked him whether he had any drugs or large amounts of money, to which Claimant responded, "no." Lutter then asked for permission to search. Lutter testified at the hearing on the Motion to Compel that while Claimant gave no verbal response to his question, Claimant offered the bag to Lutter and did not object to the search. Lutter found three bundles in Claimant's backpack which, based upon Lutter's experience and training, he perceived to be bundles of currency. Lutter eventually seized $35,140.00 (the "Defendant Currency") found within Claimant's carry-on backpack and checked luggage. The Government instituted forfeiture proceedings on the Defendant Currency on June 1, 2015 (Filing No. 1).

On June 23, 2015, Claimant moved to compel the government to return the Defendant Currency to Claimant. Claimant argues that the Court lacks jurisdiction to enforce the forfeiture of the Defendant Currency because the Government instituted these forfeiture proceedings after January 16, 2015, the date the United States Department of Justice instituted a new policy (the "Policy") prohibiting the Government from causing money to be forfeited if it was seized by local law enforcement agencies in a manner not necessary to protect public safety. (Filing No. 10 at 2.) Claimant also argues that Lutter illegally seized the Defendant Currency because Lutter lacked any legal justification to support a warrantless seizure.

The Magistrate Judge held a hearing on Claimant's Motion to Compel on July 21, 2015 (Filing No. 23; *see also* Transcript of Hearing ("Tr."), Filing No. 31.) The Magistrate Judge concluded that the Policy did not vest Claimant with any enforceable

rights. (Filing No. 28 at 3.)  Further, the Magistrate Judge concluded that Lutter lawfully conducted a "knock and talk" with Claimant and obtained Claimant's consent to search his bag.  (Filing No. 28 at 5-6.)  Claimant argues the Magistrate Judge erred in concluding that the forfeiture was not barred by the Policy.  Claimant further argues the Magistrate Judge erred in concluding that Lutter seized the Defendant Currency through legal means.

## STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(C), the Court must make a de novo determination of those portions of the findings and recommendation to which the Defendants have objected.  The Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendation.  *Id.* The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions. *Id.*

## DISCUSSION

**I.    The Policy**

Claimant argues that the Magistrate Judge erred in concluding that Claimant had no right to enforce the Policy. The Magistrate Judge cited *United States v. Gruttadauria*, 439 F. Supp. 2d 240, 247 (E.D.N.Y. 2006).  In *Gruttadauria*, a defendant moved to dismiss an indictment based on a federal government policy known as the "*Petite* policy"[1] which was "an internal statement by the United States Attorney General setting forth guidelines for federal prosecutors regarding dual and successive federal prosecutions." *Id.* (quoting *United States v. Ng,* 699 F.2d 63, 66 n. 3 (2d Cir. 1983)). The

---

[1] The Petite policy was named after *Petite v. United States,* 361 U.S. 529, 530 (1960) (granting government's motion to remand to dismiss the indictment as contrary to the government's policy against multiple prosecutions based on the same conduct).

3

defendant in *Gruttadauria* had been arrested for possession of gambling equipment, and argued that under the *Petite* policy, his state arrest should have prevented federal prosecution. The court rejected this argument, concluding that it was "well-settled that the Petite policy "affords defendants no substantive rights. It is 'merely an internal guideline for exercise of prosecutorial discretion, not subject to judicial review.'" *Id.* (quoting *United States v. Catino,* 735 F.2d 718, 725 (2d Cir.1984)); *see also Ng,* 699 F.2d at 71. Adopting the reasoning from *Gruttadauria*, the Magistrate Judge concluded that the Policy at issue in this case was likewise an internal guideline and did not vest Claimant with any enforceable rights. The Court agrees. Claimant cites no law supporting the proposition that the Policy afforded him substantive rights, nor is there any indication that the Policy somehow deprives this Court of jurisdiction in this case.

In support of his argument, Claimant cites cases involving a publicly announced policy of the Internal Revenue Service that required agents, on first contact with a taxpayer, to advise the taxpayer of the agent's function of investigating possible criminal tax fraud and inform the taxpayer of the right to remain silent and to obtain counsel. *See, e.g. United States v. Leahey*, 434 F.2d 7, 7-8 (1st Cir. 1970). In *Leahey*, the First Circuit concluded that due process required the IRS to follow its announced procedure for two reasons: First, the court reasoned that the objective of uniform conduct of all IRS agents would not be met without judicial review because otherwise there would be no incentive for the IRS to scrutinize the conduct of its agents. *Id.* at 10. Second, the IRS announced the policy to the public in direct response to inquiries about protecting constitutional rights of those suspected of criminal tax fraud. *Id.* at 10-11.

The reasoning applied by the First Circuit does not apply to the Policy in this case. Despite its conclusion regarding the IRS policy at issue in *Leahey*, the First Circuit specifically noted:

> We do not say that agencies always violate due process when they fail to adhere to their procedures. It is important here that the procedure set forth in the news release was an agency wide directive designed to protect taxpayers by setting a clear and uniform standard governing the first contact between a Special Agent and a tax fraud suspect. Our result would have been different if the I.R.S. had violated a procedure designed to promote some other agency goal.

*Id.* at 11. In this case, there is no indication that the Policy was enacted specifically to protect those affected by federal seizure of property during state arrests. Unlike the policy at issue in *Leahey*, the Policy in this case provides no indication that it was enacted to address a claimant's due process rights. On its face, the Policy affords no substantive rights, and appears to be "merely an internal guideline for exercise of prosecutorial discretion, not subject to judicial review." *Catino,* 735 F.2d at 725. Accordingly, the Magistrate Judge did not err in concluding that the Policy afforded no rights to Claimant.

## II. Consent to Search

Claimant argues that the Magistrate Judge erred in concluding that Lutter's contact with Claimant was justified. The Magistrate Judge noted that it is not a violation of the Fourth Amendment "to knock on a door without probable cause." *United States v. Spotted Elk*, 548 F.3d 641, 655 (8th Cir. 2008). "No Fourth Amendment search occurs when police officers who enter private property restrict their movements to those areas generally made accessible to visitors—such as driveways, walkways, or similar passageways." *Id.* (quoting *United States v. Reed,* 733 F.2d 492, 501 (8th Cir. 1984)).

However, "a police attempt to 'knock and talk' can become coercive if the police assert their authority, refuse to leave, or otherwise make the people inside feel they cannot refuse to open up." *Id.* (citing *United States v. Poe,* 462 F.3d 997, 1000 (8th Cir. 2006)). Claimant does not directly challenge the propriety of the "knock and talk" in his brief, nor is there any evidence demonstrating that Claimant would have felt obligated to open the door of his sleeping cabin. *See id.* Lutter's movements were limited to the public walkway in the train's sleeper car. Further, the evidence, including the video of Claimant's encounter with Lutter, does not show that Lutter commanded or ordered Claimant to open the door and speak with Lutter, nor is there any suggestion that Lutter refused to leave or was unusually persistent. *See id.* Although Lutter immediately identified himself as law enforcement, there is no indication that he was unduly coercive. Accordingly, the Magistrate Judge did not err in concluding that Lutter conducted a valid "knock and talk" with Claimant.

Claimant's principal argument is that the Magistrate Judge erred in concluding that Claimant consented to a search of his carry-on bag. "Consent is voluntary if it is the product of an essentially free and unconstrained choice by its maker, rather than the product of duress or coercion, express or implied." *United States v. Cisneros–Gutierrez*, 598 F.3d 997, 1003 (8th Cir. 2010) (internal marks and citation omitted). The Eighth Circuit has noted that "consent 'can be inferred from words, gestures, or other conduct.'" *United States v. Rogers*, 661 F.3d 991, 994 (8th Cir. 2011) (quoting *United States v. Pena–Ponce,* 588 F.3d 579, 584 (8th Cir. 2009)). "The precise question is not whether [someone] consented subjectively, but whether his conduct would have caused a

reasonable person to believe that he consented." *United States v. Jones,* 254 F.3d 692, 695 (8th Cir. 2001).

The Court's review of the video of the encounter between Claimant and Lutter does not suggest that Claimant's consent was the product of duress or coercion. When Lutter asked Claimant if Lutter could conduct a quick search of the sleeper room and bag, Claimant began opening compartments of the bag and went through them. Lutter then asked Claimant if he could look through the bag to which Claimant responded, "I guess so if you have to, yeah sure" and handed the bag to Lutter. (Govt. Ex. 2 at mins. 7:08–7:15.) Based on this evidence, the Court cannot conclude that Claimant's consent was involuntary. A reasonable person in Lutter's position could believe that Claimant consented to the search.

Claimant nevertheless asserts that persons carrying contraband who do not admit guilt would never consent to a search by police. *See Higgins v. United States*, 209 F.2d 819, 820 (D.C. Cir. 1954) ("But no sane man who denies his guilt would actually be willing that policemen search his room for contraband which is certain to be discovered."). However, "this rule has been overwhelmingly rejected by other courts." *United States v. Kelly*, 913 F.2d 261, 267 n.3 (6th Cir. 1990); *see also United States v. Mendenhall*, 446 U.S. 544, 555 (1980); *United States v. Williams,* 754 F.2d 672, 675–76 (6th Cir. 1985); *United States v. Manchester*, 711 F.2d 458, 462 (1st Cir. 1983); *United States v. Robinson*, 625 F.2d 1211, 1218–19, n.12 (5th Cir. 1980); *United States v. Ciovacco*, 518 F.2d 29, 30–31 (1st Cir. 1975); *United States v. Piet*, 498 F.2d 178, 182 (7th Cir. 1974); *Leavitt v. Howard*, 462 F.2d 992, 997 (1st Cir. 1972). For the same reasons discussed in each of these cases, the Court does not find Claimant's argument

persuasive. Claimant's words and conduct demonstrate that a reasonable person could believe that Claimant consented to the search of his carry-on bag. Accordingly, the Magistrate Judge's conclusion was not erroneous.

## CONCLUSION

For the reasons discussed, the Findings and Recommendation will be adopted, and the Motion to Compel will be denied.

IT IS ORDERED:

1. The Findings and Recommendation (Filing No. 28), are adopted;

2. The Motion to Compel (Filing No. 10) filed by the Claimant, Jonathan A. Shulkin, is denied; and

3. The Claimant's Objection to the Findings and Recommendation (Filing No. 29) is overruled.


Dated this 15th day of September, 2015

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge